### HAMNER, et al. *versus* COBB use, &c.

1. Where the penalty of an injunction bond, was for the sum of *six hundred and sixty-six and two third cents;* and the condition thereof restrained the obligor from bringing suit on, or disposing of, a note, the amount of which was *three hundred and thirty-three and one third dollars,* held, (in an action on the bond.) that the meaning of the penalty of the bond was not so obviously *six hundred and sixty-six and two-thirds dollars,* as to authorise the court to regard it as a bond for that amount.

Cobb, for the use of Wilson, declared in debt, in Madison Circuit court, against the plaintiffs in error, as obligors of an injunction bond. The bond was drawn in the penalty of six hundred and sixty-six and two-thirds *cents:* and the condition recited, that the principal obligor, was restrained from suing on, or disposing of a note, payable, in the sum of three hundred and thirty-three and two-thirds *dollars.* The declaration contained the usual averments, and the further allegation, that the word, *"cents,"* was inserted by mistake; and was intended to have been written "dollars." The court below overruled a demurrer to the declaration, which was the cause assigned for a reversal here.

HAMNER et al *vs.* CORB, use, &c.

SAFFOLD, J.—The action was debt, brought by the defendant in error, against Hamner and his securities, on an injunction bond, the condition of which was alleged to have been forfeited. The declaration alleges that said Hamner and others, "acknowledged themselves to be held and firmly bound, unto the (then) plaintiff, in the sum of six hundred and sixty six and two thirds *cents*, to be paid when requested, inserted by mistake, in the said writing obligatory, instead of six hundred and sixty-six *dollars* and sixty six and two-thirds cents—the last mentioned being the sum which it was then and there intended, and agreed, by the said plaintiff and defendant, should be inserted in the said writing obligatory," &c., which said writing obligatory, as alleged, was, and is subject to a condition, thereunder written, whereby, after reciting the circumstances of the bill having been filed, states, that, thereby, said Cobb was enjoined and restrained from trading off, or bringing suit, on a note given by said Hamner, for three hundred thirty-three and one-third dollars : and, if said Hamner should, in case of a dissolution of said injunction, pay and satisfy said Cobb, all damages, &c. the bond should be void. The declaration further alleged the dissolution of the injunction, and damage, by means of Hamner's insolvency, to the amount of three hundred thirty-three and one-third dollars, with interest.

To the declaration, in substance, as above stated, the plaintiff in error demurred ; which demurrer the court overruled : and, on *nil dicit*, gave judgment for four hundred and fifty-five dollars and ten cents.

This judgment is assigned for error.

Under the circumstances stated, was the Circuit

Judge authorised to infer the existence of the mistake; that it consisted in the insertion of six hundred and sixty-six and two-thirds cents, as the penalty of the bond, instead of six hundred and sixty-six dollars and sixty-six and two-thirds cents, as intended and agreed upon, by the parties; and, on demurrer, to sustain it, as a writing obligatory, having the force and virtue thus ascribed to it?

Doubtless, many cases of ambiguity may occur; and, in respect to such as are apparent on the face of the instrument, and are, consequently, entitled *patent* ambiguities, the courts are competent, by rational interpretation, to reconcile the uncertainty or inconsistency of the instrument, and to declare its legal effect. In case of latent ambiguity, or such mistakes or inconsistencies as cannot appear from an inspection of the instrument, the court is incompetent to decide. If contracts, involving such, can be sustained and enforced, according to the intention of the parties, it must be by the introduction of evidence before the jury, explanatory of the intrinsic circumstances, and reconcilable with the written instrument.

Here, it will be observed, the sum of money which is supposed to have been mistaken, was not intended to have been inserted in the instrument more than once, nor was it necessary. If the amount be mistaken, the face of the paper affords no certain indication of it. Where it becomes necessary to *repeat* the amount, name of any person or thing, or other matter, in the same instrument—and the same appears, obviously to have been attempted, but a material discrepancy is found to exist—it may frequently happen, from the nature and object of the instrument, together with the context, that no reasonable doubt can

386

be entertained, as to the intention of the parties,— that, the instrument being contradictory or inconsistent with itself, according to its liberal import, the mistake may be so clearly indicated, by the references alluded to, as to leave no doubt as to what the proper correction should be.   In such cases, the court is permitted, by law, from an inspection of the instrument alone, so to construe it, as to preserve its force, and effectuate the intention of the parties to it. But, it is a delicate power, to be resorted to, only under such circumstances as necessarily demand its exercise, for the advancement of justice; and, where the intention is sufficiently indicated to enable the court to ascertain it, with reasonable certainty.   The condition of the bond is, also, set out, in the declaration, which shews the object to have been to enjoin and restrain Cobb, "from trading off, or bringing suit on a note, given by Hamner, on, or about the second December, 1823, for three hundred thirty-three and one-third dollars."  We recognise, as a general rule of Chancery practice, on granting injunctions in similar cases, for the *Chancellor*, by his *fiat*, to require bond and security, in a sum, *about* double the amount to be enjoined.   The precise sum, however, is in his discretion, according to the apparent necessity; as was, also, the requisition of any bond, at the time of obtaining this injunction.   There does, truly, appear great inconsistency, in requiring a bond, in only the amount of this, to enjoin proceeding, for the amount of the note in question.   It is also suggested, in argument, that a reference to the *fiat*, would probably shew, that the sum, intended as the penalty of the bond, was six hundred sixty-six and two-thirds dollars, instead of so many cents; and that this sum, be-

ing just double the amount enjoined, by so construing the bond, all the proceedings become consistent.

I am free to admit, that the circumstances warrant the conclusion, that such was the intention of at least the clerk, who took the bond; and that it is a fair presumption, that Hamner, who was the principal, and familiar with the circumstances—and, perhaps, his securities, also—knew such to have been the intention; nor do I think it improbable, that they may have been under the impression afterwards, that the bond they had signed, was for the larger sum.

On the contrary, it is to be observed, the *fiat* alluded to, does not appear of record ; and, it is questionable, if it could, legally, have become a part of it,— therefore, that reliance must be left entirely out of view.

Respecting the inconsistency in the two sums mentioned in the instrument, (the bond and the condition,) it is to be recollected, they evidently were not intended to be the same, and to suppose they were, would defeat the action, no less than any other hypothesis. A bond, according to its tenor and effect, may be legal and valid, though a condition which was intended to qualify it may be void. Moreover, it is clear, that an intention by any one, to take an instrument of a particular description, and a belief, that it had been effected, cannot give the desired validity to the instrument, (especially in a court of law,) if, through mistake, or inadvertence, or other cause, the act has not been done.

All the most essential rights of property depend on the sacred character of bonds and other instruments; consequently they are held inviolate. Admitting that the persons whose names appear on this instrument, can fairly be presumed to have intended

the execution of one as far different as is alleged', it by no means follows that they are legally bound according to this supposed intention. The inviolable nature of such instruments cannot be preserved if any tribunal has authority to remodel or vary them, according to the emergency, or probable intent of the parties. We can not be certain that these securities, at least, who may have been ignorant of the facts, may not have particularly noticed the amount of the bond, and been induced to join in the execution alone from the conviction that the amount was so small that the injury could not be great. The contrary can not appear without the introduction of parol proof to control the instrument, if in that way it could: and such would be a precedent of dangerous tendency, and one inadmissible by the established rules of evidence.

Of the several cases cited in argument on the part of the defendant in error, that which appears most favorable to him, is considered fairly distinguishable from this. It is the case of *Colburn et al. vs. Downs*[1], [10 Mass. R. 20.] That was a suit by *scire facias*, on a bail bond, payable to the plaintiffs, *Colburn and Gill*, a mercantile firm. The defendant having denied by his plea, that he ever became bail, on the trial the plaintiffs produced the bail bond, containing a misnomer as to the christian names of both the plaintiffs. It was in this, that their true names were *James L. Colburn* and *William Gill*, and so appeared in the *scire facias*: but by mistake had been inserted in the bond *John S. Colburn* and *George W. Gill*. The bond was objected to as evidence, but on a further inspection of it, the plaintiffs were therein described as "of Boston, in the county of Suffolk, merchants and co-partners

in trade, jointly negotiating in business, under the firm of *Colburn & Gill*," from which the court held the description of the plaintiffs sufficiently certain to afford validity to the bond. In that case, it is to be observed, the plaintiffs, whose christian names only had been mistaken, were otherwise so far described by their mercantile connection, the true title of their firm, and place of business, as to leave no rational doubt of their identity; so that, admitting the authority of that case, it is not decisive of this. The same may be said of the other case cited in argument on the same side.

We are of opinion the judgment below must be reversed.